UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD JOHNSON, on behalf of himself and all others similarly situated,

Plaintiff,

v.

OPCO, LLC, d/b/a VINCE.COM,

Defendant.

---

Case No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, RICHARD **JOHNSON** ("Plaintiff" or "Mr. Johnson"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant, OPCO, LLC, d/b/a VINCE.COM, ("Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content while using his computer. *Exhibit A – Richard Johnson, Low Vision Evaluation Report, dated 09/10/2024.* Plaintiff uses the terms "blind" or "visually-impaired," as his central visual acuity with correction is less than or equal to 20/200. Mr. Johnson suffers from proliferative diabetic retinopathy (PDR), a severe stage of diabetic eye disease that causes rapid and permanent loss of vision. He has been formally certified as legally blind by the New York State Commission for the Blind.

2. Defendant V Opco, LLC, a wholly owned subsidiary of Vince Holding Corp., operates the consumer-facing retail brand Vince through its interactive e-commerce website,

www.vince.com (the "Website" or "Defendant's Website"). Vince Holding Corp. is a publicly traded company (NYSE: VNCE) with annual revenues of approximately $293 million, nearly half of which derives from direct-to-consumer sales, including vince.com. The Website functions as a central hub for Vince's retail operations, offering luxury apparel, accessories, and seasonal collections. Defendant maintains corporate offices in New York City and operates retail stores nationwide, but its Website is a primary channel for consumer engagement and sales.

3. Plaintiff, Richard Johnson, visited www.vince.com to browse and purchase men's designer clothing and holiday gift items. Plaintiff sought to use the Website's product listings, shopping cart, and checkout features to independently complete purchases. However, due to persistent accessibility barriers—including missing alternative text, empty links, broken ARIA references, and low-contrast elements documented in WAVE and Sort Site audits (Exhibits B and C)—Plaintiff was unable to navigate or transact on the Website without assistance. He remains eager to return once the Website is remediated, as Vince's offerings are uniquely suited to his personal style and purchasing needs.

4. Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate the Website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to www.vince.com, and therefore its denial of the goods and services offered thereby—including essential retail transactions—is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5. Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in

the United States are visually impaired,[1] including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, approximately 418,500 visually impaired persons live in the State of New York.[2]

6. Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7. Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant violates the ADA. Plaintiff now seeks a permanent injunction requiring Defendant to adopt, implement, and maintain accessible web design practices consistent with WCAG 2.1 AA, including: appointing a qualified accessibility coordinator; conducting periodic audits and user testing with blind users; remediating code issues (e.g., alternative text, ARIA associations, heading hierarchy, focus order, and color contrast); ensuring third-party integrations are accessible; publishing an accessibility statement and feedback channel; training relevant personnel; and instituting ongoing monitoring so that vince.com becomes and remains fully accessible and independently usable by blind and visually-impaired consumers.

---

[1] *See* United States Census Bureau Report.

[2] *See* 2016 National Federation for the Blind Report.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.)("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") & § 296 et seq.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

10. Venue is proper in this District under 28 U.S.C. §1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District, via the Internet and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on several occasions, the subject Website within his home located in Bronx County, New York, located within this judicial District.

11. Defendant, V Opco, LLC d/b/a Vince, is a Delaware limited liability company with its principal office located at 500 Fifth Avenue, New York, NY 10110, and is subject to personal jurisdiction in this District because Defendant purposefully targets and solicits business from New York State residents through its highly interactive Website, www.vince.com. Defendant's parent company, Vince Holding Corp., is a Delaware corporation publicly traded on the New York Stock Exchange (NYSE: VNCE), with its principal executive offices likewise located in New York, New York.

12. Defendant has been and is committing the acts or omissions alleged herein in the

Southern District of New York, and in so doing, violated the rights the ADA prescribes to Plaintiff and to other blind and other visually impaired consumers, causing them to suffer injury. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District on several separate occasions.

13. Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website in Bronx County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past and now deter Plaintiff regularly from accessing Defendant's Website, www.vince.com, in the future. Most courts support the placement of venue in the district in which the Plaintiff tried and failed to access a website.

14. The United States Department of Justice Civil Rights Division has recently stated that, "[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those provided through websites." Plaintiff is a member of the protected class of individuals under the ADA, 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., and the NYCHRL. Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as Nonvisual Desktop Access ("NVDA"). See, e.g., *Chloe NA v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); see also *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021) (personal jurisdiction can be found as long as

the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products).

## NATURE OF ACTION

15. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

16. In today's tech-savvy world, blind and visually impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites and the information, products, goods, and services contained thereon.

17. Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase, and other programs are available without the user having to purchase the program separately, such as the popular screen-reading software program for a Windows computer, Nonvisual Desktop Access "NVDA."

18. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted

users.

19. Screen readers have rules and expectations about what the gathered information is and should be and use sophisticated rules to interpret what it has "seen," i.e., gathered with help from the operating system, the app in question, and other ways. Based on information gathered and subsequently interpreted, screen readers use components such as text-to-speech (TTS), braille, and other output mechanisms to present screen content.

20. The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

21. Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a. A text equivalent for every non-text element is not provided;

b. Title frames with text are not provided for identification and navigation;

c. Equivalent text is not provided when using scripts;

d. Forms with the same information and functionality as for sighted persons are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDF); and

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

22. Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the

digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STANDING

23. Plaintiff, RICHARD JOHNSON, is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For Plaintiff to access the Internet, he must utilize a computer that contains a screen-reader, such as "NVDA for Windows." Plaintiff has been formally certified as legally blind by the New York State Commission for the Blind due to proliferative diabetic retinopathy.

24. Screen reader "software translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight-impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link, says the word "clickable."…Through a series of auditory cues read aloud by

> the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on June 20, 2024; estimating 26.0 million adult Americans reported sight deficiency).

25. Plaintiff attempted to access Defendant's Website, www.vince.com, on November 20, 2025, November 25, 2025, and again on December 1, 2025, from his home in Bronx County, New York. On each occasion, Plaintiff sought to browse and purchase specific products, including: Dylan Slim 5-Pocket Peached Stretch-Cotton Pant for everyday wear; Leather Zip-Up Jacket for winter use; Featherweight Merino Wool-Cashmere Hoodie for comfort and layering; and holiday gift items from Vince's Holiday Gift Guide 2025, including cashmere sweaters and accessories for family members.

26. Plaintiff specifically sought these items from Vince because the brand is known for luxury apparel with minimalist design, and Vince's Website offers exclusive seasonal collections not available through third-party retailers such as Macy's or Nordstrom. Plaintiff's roommate had agreed to contribute toward holiday purchases, and Plaintiff wanted to independently select and order items directly from Vince's official Website to ensure authenticity, access to Vince's full catalog, and eligibility for Vince's direct-to-consumer promotions.

27. Despite repeated efforts, Plaintiff was unable to navigate key portions of the Website, including product categories, checkout forms, and promotional features. Accessibility barriers documented in WAVE audits and confirmed by SortSite scans included missing

alternative text on product images (with placeholders such as "null" or "picture"), empty links, broken ARIA references, low-contrast text, redundant title text, skipped heading levels, and unlabeled form fields in checkout and login processes. SortSite further revealed autoplaying videos without pause controls, duplicate IDs across navigation menus, and ARIA role errors affecting over 1,300 pages.

28. These barriers obstructed Plaintiff's ability to complete purchases and engage with the Website independently. Plaintiff was forced to abandon his attempts to buy Vince products, despite his clear intent and ability to pay.

29. Plaintiff's experience was not merely inconvenient—it was dehumanizing. Each attempt to browse Vince's Holiday Gift Guide or select apparel ended in frustration, as unlabeled buttons, inaccessible modals, and broken links blocked his path. He could not visualize Vince's cashmere sweaters or leather jackets in his shopping cart, nor could he save gift selections for family members. These barriers were not technical glitches—they were digital walls that excluded him from participating in the same shopping journey that sighted users enjoy.

30. Plaintiff felt the sting of exclusion not only as a consumer but as a family member preparing holiday gifts. He had identified specific Vince products for his loved ones and attempted to complete purchases through the Website. Instead, he was met with inaccessible forms, broken navigation, and account creation errors, forcing him to abandon the process. The denial of access to these services disrupted his holiday plans and reinforced a systemic message: that blind users are not welcome.

31. Plaintiff intends to return to www.vince.com within the next 30 days to complete holiday purchases once the Website is remediated, and again in Spring 2026 to shop Vince's

seasonal collections. His intent is not speculative—it is rooted in necessity and preference. Vince's Website is uniquely positioned to meet his needs because it offers exclusive Vince collections not available elsewhere, provides direct-to-consumer pricing and promotions, and is the official source for Vince apparel, ensuring authenticity.

32. Defendant has previously been sued for similar ADA website accessibility violations. See *Calcano v. Vince Holding Corp.*, 19-CV-11445 (JMF) (S.D.N.Y. 2019). Despite this litigation, Defendant has failed to remediate its Website. The recurrence of barriers and lack of meaningful updates demonstrates a pattern of neglect and noncompliance.

33. Plaintiff's experience is not hypothetical or speculative. He has encountered specific, documented barriers and has a credible intent to return, satisfying the standing requirements articulated in *Calcano v. Swarovski North America Ltd.,* 36 F.4th 68 (2d Cir. 2022), and *Riley v. Baggu Corp.,* 2025 U.S. Dist. LEXIS 150080 (SDNY August 5, 2025).

34. On December 2, 2025, Plaintiff's counsel conducted additional accessibility audits of www.vince.com using SortSite. These scans corroborated the WAVE findings and revealed systemic accessibility failures across thousands of pages, including 2,371 pages with accessibility problems, 1,292 pages with broken links or errors, and 2,384 pages failing W3C standards validation. The broken link report identified repeated failures in Vince's Facebook integration and account creation workflows, while the site quality report confirmed widespread defects in navigation and coding standards.

35. Because simple compliance with WCAG 2.1 Level AA Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Defendant's failure to remediate constitutes unlawful discrimination under Title III of the ADA, 42 U.S.C. §

12182.

36. Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a. Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

b. Failing to construct and maintain a Website that is sufficiently intuitive to be equally accessible to visually impaired individuals, including Plaintiff; and

c. Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

37. Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others, as alleged herein.

38. The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires: "In the case of violations of… this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities… [w]here appropriate, injunctive relief shall also include requiring the… modification of a policy…" 42 U.S.C. § 12188(a)(2).

39. Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website.

Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to

a. Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

b. Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

c. Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies with the WCAG 2.1 guidelines; and

d. Develop an accessibility policy that is disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

40. Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make it fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

41. Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from its online platforms. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website.

## CLASS ACTION ALLEGATIONS

42. Plaintiff, RICHARD JOHNSON, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a

result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

43. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

44. Common questions of law and fact exist amongst the Class, including:

a. Whether Defendant's Website is a "public accommodation" under the ADA;

b. Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

45. Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA, NYSHRL, NYCRL, and/or the NYHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

46. Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and

experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

47. Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

48. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

49. Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

**<u>FIRST CAUSE OF ACTION</u>**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

50. Plaintiff, RICHARD JOHNSON, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

51. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

52. Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

53. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

54. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

55. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons

who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

56. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

57. Plaintiff, RICHARD JOHNSON, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

59. Defendant is subject to NYCHRL because it owns and operates the Website www.vince.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

60. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated

completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

61. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

62. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

63. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

64. As such, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-

107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

65. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

66. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

67. Plaintiff is also entitled to reasonable attorneys' fees and costs.

68. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

69. Plaintiff, RICHARD JOHNSON, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

70. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

71. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article

15 of N.Y. Executive Law § 292(21).

72. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

73. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

74. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

75. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

76. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to

afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

77. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

78. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

79. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

80. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

81. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

82. Plaintiff, RICHARD JOHNSON, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

84. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

85. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

86. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental,

or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

87. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

88. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

89. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

90. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

91. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

92. Plaintiff, RICHARD JOHNSON, on behalf of himself and the Class and New York

City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

93. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

94. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
December 2, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

Robert Schonfeld
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889